**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

GABRIEL RAMOS,

    Plaintiff,

v.           Case No. 6:24-cv-2273-JRK

FRANK BISIGNANO,
Commissioner of Social Security,[1]

    Defendant.

_____/

## **<u>OPINION AND ORDER</u>**[2]

### **<u>I.  Status</u>**

Gabriel Ramos ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying his claims for child disability insurance benefits ("CDIB")[3] and supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of attention-deficit

---

[1] Frank Bisignano is now the Commissioner of Social Security. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Mr. Bisignano should be substituted as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. <u>See</u> Order Regarding Consent to Magistrate Judge Jurisdiction in Social Security Appeals (Doc. No. 117), Case No. 3:21-mc-1-TJC (outlining procedures for consent and Defendant's generalized consent to Magistrate Judge jurisdiction in social security appeals cases); consent by Plaintiff indicated in docket language for Complaint (Doc. No. 1).

[3] <u>See</u> 20 C.F.R. § 404.350(a)(5) (providing for "child's benefits on the earnings record of an insured person who is entitled to old-age or disability benefits or who has died if . . . [the claimant] is 18 years old or older and ha[s] a disability that began before [he] became 22 years old").

hyperactivity disorder, depression, anxiety, and Autism spectrum disorder. Transcript of Administrative Proceedings (Doc. No. 14; "Tr." or "administrative transcript"), filed March 12, 2025, at 56, 67, 78, 90, 277.

On March 17, 2022 and March 8, 2022, Plaintiff protectively filed applications for CDIB and SSI, respectively, alleging a disability onset date of August 31, 2021 in the CDIB application and August 1, 2015 in the SSI application. Tr. at 240-49 (SSI).[4] The applications were denied initially, Tr. at 55, 67-76, 104-07 (CDIB); Tr. at 56-65, 66, 109-12 (SSI), and upon reconsideration, Tr. at 77, 90-100, 128-30 (CDIB); Tr. at 78-88, 89, 132-34 (SSI).

On April 25, 2024, an Administrative Law Judge ("ALJ") held a hearing, during which he heard from Plaintiff, who was represented by counsel, and a vocational expert ("VE").[5] Tr. at 33-54. At the time of the hearing, Plaintiff was twenty (20) years old. Tr. at 37. On May 29, 2024, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. See Tr. at 17-27.

Thereafter, Plaintiff requested review of the Decision by the Appeals Council and submitted a brief authored by his lawyer. Tr. at 4-5 (Appeals

---

[4]    The CDIB application was not located in the administrative transcript, but administrative paperwork lists the alleged disability onset date as August 31, 2021. See Tr. at 67, 90. The SSI application was actually completed on March 17, 2022. See Tr. at 240. The protective filing date for the applications is listed in the administrative transcript as March 17, 2022 for the CDIB claim and March 8, 2022 for the SSI claim. Tr. at 67, 90 (CDIB), 56, 78 (SSI).

[5]    The hearing was held via telephone, with Plaintiff's consent. Tr. at 36-37, 188, 351.

2

Council exhibit list and order), 235-39 (request for review and cover letter), 360-67 (brief). On October 24, 2024, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, making the ALJ's Decision the final decision of the Commissioner. On December 13, 2024, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1), through counsel, seeking judicial review of the Commissioner's final decision.

Plaintiff on appeal argues the ALJ erred in 1) "fail[ing] to consider the objective medical evidence and explanations presented by [Mylissa] Fraser[, Psy.D., NCSP] to support her opinion"; 2) "making his own medical findings" when evaluating the opinion evidence; 3) "fail[ing] to identify a genuine inconsistency before discounting [Dr. Fraser's] opinion as inconsistent with [her] own medical records"; 4) "fail[ing] to provide proper analysis of whether Dr. Fraser's opinion was consistent with the rest of the record"; and 5) "fail[ing] to properly analyze [Scott] Kaplan[, Ph.D.'s] opinion." Memorandum in Support of Plaintiff (Doc. No. 15; "Pl.'s Mem."), filed April 11, 2025, at 11, 15, 17, 22 (some capitalization and emphasis omitted). On May 8, 2025, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 17; "Def.'s Mem.") addressing Plaintiff's arguments. Then, on May 22, 2025, Plaintiff's Memorandum in Reply (Doc. No. 18; "Reply") was filed.

After a thorough review of the entire record and consideration of the parties' respective arguments, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for further proceedings.

## II.  The ALJ's Decision

When determining whether an individual is disabled, [6] an ALJ must follow the five-step sequential inquiry set forth in the Regulations, determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). This inquiry is followed in evaluating CDIB claims, see 20 C.F.R. § 404.1520(b), and in evaluating SSI claims in which the claimant is age 18 or older, see 20 C.F.R. § 416.920(a)(2). The claimant bears the burden of persuasion through

---

[6]    "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

step four, and at step five, the burden shifts to the Commissioner. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ found Plaintiff "had not attained age 22 as of August 31, 2021, the alleged onset date," Tr. at 19, a threshold question in CDIB claims. Next, the ALJ followed the five-step inquiry. <u>See</u> Tr. at 19-27. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since August 31, 2021, the alleged onset date." Tr. at 19 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: autism spectrum disorder, attention deficit hyperactivity disorder, and depressive and anxiety disorders." Tr. at 19 (emphasis and citation omitted). At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 20 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] is limited to jobs involving simple and repetitive tasks with occasional interaction with the general public and co-workers. [Plaintiff] is also limited to jobs involving occasional changes in the work setting.

Tr. at 21 (emphasis omitted).

At step four, the ALJ relied on the VE's hearing testimony and found that Plaintiff "has no past relevant work." Tr. at 26 (emphasis and citations omitted). The ALJ then proceeded to the fifth and final step of the sequential inquiry. Tr. at 26-27. After considering Plaintiff's age ("18 years old . . . on the alleged disability onset date"), education ("limited"), lack of work experience, and RFC, the ALJ relied on the VE's testimony and found "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," such as "Industrial Cleaner," "Housekeeper," and "Hand Packager." Tr. at 26-27 (some emphasis and citation omitted). The ALJ concluded Plaintiff "has not been under a disability . . . from August 31, 2021, through the date of th[e D]ecision." Tr. at 27 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable

6

mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

Plaintiff issues—all challenging the ALJ's handling of medical opinions—are related and are addressed together.

The SSA revised the rules regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (January 18, 2017); see also 82 Fed. Reg. 15,132 (March 27, 2017) (amending and correcting the final Rules published at 82 Fed. Reg. 5,844). Under the new rules and Regulations, "A medical opinion is a statement from a medical source about what [the claimant] can still do despite [his or her] impairment(s) and whether

[the claimant] ha[s] one or more impairment-related limitations or restrictions in the following abilities:" 1) the "ability to perform physical demands of work activities"; 2) the "ability to perform mental demands of work activities"; 3) the "ability to perform other demands of work, such as seeing, hearing, or using other senses"; and 4) the "ability to adapt to environmental conditions." 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2); see also 20 C.F.R. § 404.1502 (defining "[a]cceptable medical sources"). An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). [7] "Because section 404.1520c falls within the scope of the Commissioner's authority and was not arbitrary and capricious, it abrogates [the United States Court of Appeals for the Eleventh Circuit's] prior precedents applying the treating-physician rule." Harner v. Soc. Sec. Admin., Comm'r, 38 F.4th 892, 896 (11th Cir. 2022).

The following factors are relevant in an ALJ's consideration of a medical opinion or a prior administrative medical finding: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's]

---

[7]    Plaintiff filed his applications after the effective date of sections 404.1520c and 416.920c, so the undersigned applies the revised rules and Regulations.

disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors, and the ALJ must explain how these factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how he or she evaluated the remaining factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, if the ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ." 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).[8]

Here, Plaintiff was referred to Dr. Fraser "for a comprehensive evaluation to assess for an autism spectrum disorder" and to "gain insight into [his diagnoses], receive diagnostic clarification, and to guide the design of interventions for improving his overall functioning." Tr. at 369. Dr. Fraser evaluated Plaintiff over the course of two days, July 15, 2021 and August 9, 2021, Tr. at 369, and authored a report shortly thereafter, Tr. at 369-82.

---

[8]   When a medical source provides multiple opinions, the ALJ is also not required to articulate how he or she evaluated each medical opinion individually. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). Instead, the ALJ must "articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate." 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

Evaluating Dr. Kaplan's recommendations and report, the ALJ wrote:

> [Plaintiff] had a psychological evaluation in July and August of 2021 with Mylissa Fraser, Psy.D. [Plaintiff] was dressed appropriately and sufficiently groomed. He spoke in simple and complex sentences. Adequate vocabulary was noted. His use of gestures was overall reduced. He was noted to use occasional conventional gestures. Eye contact was reduced and inconsistently paired with his verbal and nonverbal communication. He looked down at the table or towards the wall when speaking. He displayed overall flat affect. He answered questions at a variable rate and occasionally needed additional time to formulate a response before answering. The presence of repetitive speech was noted. He was also noted to repeat himself quietly under his breath. He presented with a heightened level of anxiety throughout the evaluation. He exhibited repetitive hand rubbing, finger tapping, leg shaking, and finger flickering. On the Wechsler Adult Intelligence Scale, Fourth Edition, his full scale IQ score was 100. Overall, he performed in the average range. His scores reflected a relative weakness in processing speed. Subtest scores fell in the low average, average, and high average ranges. Adaptive skills were relatively consistent. Scores to evaluate for social impairment fell in the mild, moderate, and severe ranges. An autism scale was also administered, and scores fell in the mild to moderate symptoms of autism spectrum disorder range. Based on the administration of several tests, the examiner noted [Plaintiff] performed within the average range on the Wechsler Adult Intelligence Scale, Fourth Edition, and the low range of adaptive abilities. He also met the criteria of autism spectrum disorder, attention deficit hyperactivity disorder, persistent depressive disorder, and generalized anxiety disorder.
>
> . . .

Dr. Fraser provided a list of workplace accommodations, including:

• Allowing for short breaks when appropriate with consideration of a modified break schedule;

• Providing rubrics, checklists, written instructions, and other organizers whenever possible to promote task completion;

• Allowing for use of additional privacy and minimization of distractions in a classroom/office setting (e.g., seating in a corner away from others, use of cubicle attachments (door, shield, shade), use of noise machine, noise cancelling headphones, etc.);

• Allowing for a modified daily work schedule when appropriate;

• Providing assistance in scheduling and prioritizing necessary tasks;

• Using of technology (e.g., text to speech, recording lectures/meetings) as appropriate;

• Allowing a work from home schedule when appropriate;

• Providing peer-mentoring and coaching;

• Providing time and a half on all timed tasks (e.g., exams).

This opinion was unpersuasive as it was not consistent with the medical evidence of record or supported by the report. Largely, [Plaintiff's] records reflected minimal if any treatment. His medication dosage was low, reflecting 50mg of Zoloft. [Plaintiff] had indicated that social interaction was difficult, and that if anything happened that was unexpected he would panic. For example, he testified to this when speaking about interacting with cashier. He testified that he would just push through, however. The consultative examination

11

report indicated [Plaintiff] reported he left the house four times a week. To account for unexpected circumstance that may exacerbate symptoms, the [RFC] provided for occasional changes in the work setting, and it also provided for only occasional interaction with the general public and coworkers. [Plaintiff's] ability to perform simple routine tasks was reflected in his ability to perform his wide range of activities of daily living, such as self-care, watching television and movies, preparing simple meals, driving, and some chores. His thoughts were logical, sequential, and organized, which was supported by his testimony that he searched and applied for jobs, attended job interviews, and had wanted to obtain his GED. This activity showed goal-setting and logical steps to achieve said goal. [Plaintiff] had testified that he lacked motivation, however, his ability to leave the house and interact outside of that environment despite his reluctance to engage socially reflected that despite it, he remained able to do so. Thus, while he reportedly lacked motivation, this demonstrated that he could perform the tasks even if he did not feel inclined to do so. He obtained a full scale IQ score of 100 on the Wechsler Adult Intelligence Scale, Fourth Edition. Dr. Fraser noted that overall, he performed in the average range. His scores reflected a relative weakness in processing speed. Subtest scores fell in the low average, average, and high average ranges. Adaptive skills were relatively consistent. Overall, her statements and opinions were not supported by her report or consistent with the balance of his records.

Tr. at 22, 24-25 (citations omitted).

Dr. Kaplan examined Plaintiff on March 27, 2023 and authored a report shortly thereafter. Tr. at 392-94. Evaluating Dr. Kaplan's report and opinion, the ALJ wrote:

12

In March of 2023, [Plaintiff] had a psychological consultative examination with Scott Kaplan, Psy.D. [Plaintiff] reported presently taking Zoloft with benefit. He was dressed appropriately, and was well oriented. Speech processes were clear and logical, and there was no evidence of circumstantiality or pressured speech. Mood and affect were depressed and anxious. Thought processes were logical, sequential, and organized, and there was no evidence of hallucinations or delusions. Concentration and memory functioning were variable. He was able to recall six digits forward and four backward. Gross and fine motor coordination were adequately developed. He was cooperative with testing. [Plaintiff] was diagnosed with: autism spectrum disorder; attention deficit hyperactivity disorder; persistent depressive disorder; and unspecified anxiety disorder.

. . .

Dr. Kaplan opined [Plaintiff] would likely experience mild impairment understanding one and two step tasks, moderate impairment understanding complex tasks and moderate to marked impairment getting along in social settings and adapting. This opinion was generally persuasive as it was from an evaluating source whose opinion and findings were supported by the examiner's report, and were generally consistent with the other substantial evidence of record. As discussed above, even while [Plaintiff] was reluctant to engage socially, he was able to leave the house several times a week. He remained able to engage appropriately and interact with medical professionals. He had also testified that he had undergone interviews, but had not been hired at any of the jobs. Thus, he could interact with others in the furtherance of his goal, namely to be employed. [Plaintiff] was able to perform simple routine tasks, as reflected in his activities of daily living. To account for his symptoms, and in light of his testimony, additional limitations for occasional changes were included in the [RFC] so as not to

13

> exacerbate symptoms. Dr. Kaplan had noted moderate impairment understanding complex tasks and moderate to marked impairment getting along in social settings and adapting. This was accounted for in the [RFC] with a provision for simple routine tasks. Notably, however, marked social limitations were not supported, as [Plaintiff] had remained able to leave his house several times a week, and also attend job interviews. Further, his behavior was appropriate when interacting with medical professionals.

Tr. at 23, 25-26 (citations omitted).

As earlier summarized, Plaintiff contends the ALJ erred in evaluating Dr. Fraser's opinion by 1) failing to consider the relevant objective medical evidence and explanations provided by Dr. Fraser; making his own medical findings; failing to identify a genuine inconsistency with Dr. Fraser's medical records; and failing to provide a proper analysis of whether Dr. Fraser's opinion was consistent with the rest of the record. Pl.'s Mem. at 11-22; Reply at 2-7. Plaintiff argues the ALJ erred in evaluating Dr. Kaplan's opinion by finding it generally persuasive but then electing not to include in the RFC the assigned moderate to marked impairment related to social settings and adapting. Pl.'s Mem. at 22-25. Responding, Defendant contends that the ALJ's findings on all issues were reasonable and supported by substantial evidence. Def.'s Mem. at 5-21.

At the heart of most of the issues Plaintiff raises about these opinions is the severity of his social limitations. See Pl.'s Mem. at 11-25. The ALJ found the social limitations were overstated by both Dr. Fraser and Dr. Kaplan. See

14

Tr. at 24-26. Dr. Fraser determined that Plaintiff should have workplace accommodations related to his social limitations. Tr. at 380-81. Dr. Kaplan determined Plaintiff had "moderate to marked impairment getting along in social settings and adapting." Tr. at 394.

One of the main reasons relied upon by the ALJ for finding Dr. Fraser's opinion "unpersuasive" and the portion of Dr. Kaplan's opinion about marked social limitations "not supported" was that Plaintiff was able to leave his house four times per week. See Tr. at 25, 26; see also Def.'s Mem. at 14-15 (relying on Plaintiff leaving the house four times per week and other activities). The evidence on this issue is not entirely clear. At the hearing, Plaintiff testified, "lately it's been hard to leave the house, which is why I switched this over to [a] phone hearing." Tr. at 40. He continued, "some days I can't even like step out the front door without immediately having a panic attack." Tr. at 40. Plaintiff testified he could drive, but he "ha[s]n't been able to drive lately." Tr. at 43; see Tr. at 46-47. According to Plaintiff, he experiences great anxiety in social settings, including interacting with cashiers and the like. Tr. at 43, 45-46.

In Dr. Fraser's report, it was noted that Plaintiff was driven to the August 9, 2021 evaluation by his mother. Tr. at 372. Dr. Fraser noted Plaintiff "does not express interest in social outings" and "communicates with similar-aged peers online through video game platforms." Tr. at 371. The report continues, "He previously enjoyed going to the movies with his mother." Tr. at 371.

15

Plaintiff "will also go with his mother on errands (e.g., grocery store)." Tr. at 371. The report further states that Plaintiff "has a driver's license and drives his mother's car independently" and "completes simple errands for his mother." Tr. at 371.

As for Dr. Kaplan's report, Plaintiff again appeared at the evaluation with his mother. Tr. at 392. Dr. Kaplan noted Plaintiff "does have a license and drives about four times per week." Tr. at 392. "He currently lives with his mother with very limited social relationships and limited social skills." Tr. at 392. Dr. Kaplan noted Plaintiff "does leave the home about four times per week," Tr. at 392, which appears to be the basis for the ALJ's findings about Plaintiff's social limitations not being as severe as he contends. The report is silent on whether Plaintiff is accompanied by his mother when he does leave the house.

Even if the Court accepts the ALJ's finding that Plaintiff leaves his house unaccompanied four times per week (about once every other day), this fact alone does not amount to a genuine inconsistency between the medical opinions on social functioning and the evidence. See Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1262-63 (11th Cir. 2019) (quotation, citation, and internal alteration omitted) ("an ALJ must identify a genuine inconsistency"). And, it does not follow from Plaintiff's ability to leave the house four times per week for small periods of time that he could "occasional[ly] interact[] with the general public

and co-workers," as the ALJ found in the RFC. Tr. at 21. Reversal with remand is required for the ALJ to reevaluate the opinions of Dr. Fraser and Dr. Kaplan, particularly as they relate to Plaintiff's social functioning.

## V.  Conclusion

In light of the foregoing, it is

**ORDERED**:

1.      The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), and pursuant to § 1383(c)(3), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

(A)     Reevaluate the opinions of Dr. Fraser and Dr. Kaplan, particularly as they relate to Plaintiff's social functioning; and

(B)     Take such other action as may be necessary to resolve this claim properly.

2.      The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on March 26, 2026.

James R. Klindt
JAMES R. KLINDT
United States Magistrate Judge

17

kaw
Copies:
Counsel of Record